**Melvin RHYNE, Defendant-Appellant,**

v.

**UNITED STATES of America, Plaintiff-Appellee.**

**No. 16768.**

United States Court of Appeals Seventh Circuit.

Feb. 20, 1969.

Kenneth S. Jacobs, Jacobs & Spencer, Villa Park, Ill., for defendant-appellant.

Thomas N. Todd, Asst. U. S. Atty., Thomas A. Foran, U. S. Atty., Chicago, Ill., for appellee, John Peter Lulinski, Michael B. Nash, Asst. U. S. Attys., of counsel.

Before HASTINGS, Senior Circuit Judge, and SWYGERT and CUMMINGS, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Defendant Melvin Rhyne appeals from a judgment of the district court finding

him guilty of knowingly and willfully neglecting, failing and refusing to submit to induction into the armed forces at Chicago, Illinois, in violation of Section 12, Universal Military Training and Service Act, Title 50, U.S.C.A. App. § 462. As a result of such judgment, defendant Rhyne was sentenced to three years imprisonment.

On July 13, 1966, Rhyne was reclassified from II-S to I-A by his local selective service board, Board No. 78, Chicago, Illinois. The apparent basis for this reclassification rested on the fact that defendant, by his own acknowledgment, was no longer a full-time student and therefore not entitled to a continuance of his II-S student deferment classification.

On August 16, 1966, pursuant to the I-A classification, Rhyne's local board ordered him to report for induction on September 14, 1966. Rhyne allegedly refused to submit to induction at the assigned induction station which was located in Chicago, Illinois. At the induction center, defendant allegedly refused induction into military service on the ground that his religious convictions as a member of the Jehovah's Witnesses precluded him from serving in the armed forces.

In passing, it is both interesting and curious to note that in reviewing defendant's selective service files we fail to find any evidence that defendant ever appealed any classification given him by his local board. Further, defendant's selective service records do not show that he ever indicated to his local board that he held any religious beliefs or was affiliated with any religious sect whose tenets might entitle him to special draft consideration as a conscientious objector. The first manifestation of his supposed religious scruples came at the time of his refusal to be inducted.

At the trial, the Government had the clerk of defendant's local board, Moncil Swoope, produce and testify concerning defendant's selective service file. The file indicated that defendant refused induction, and it was admitted into evidence over defendant's objection. After calling to the stand two special agents of the Federal Bureau of Investigation, Thomas Colbert and Peter J. Wacks, to identify defendant Rhyne, the Government rested its case.

Thereafter, defendant filed a motion for judgment of acquittal on the ground that the Government failed to establish beyond a reasonable doubt by competent evidence that he did commit the crime of refusing to submit to induction. In filing the motion, defendant contended that his selective service file alone was not sufficient to prove that he did refuse to submit to induction. Defendant urged that this documentary evidence must be corroborated by other evidence, while the Government contended that defendant's selective service record was alone sufficient to establish his guilt of refusing to submit to induction. In view of this controversy between the litigants, the district court, over defendant's objection, granted the Government's request for leave to reopen its case for the purpose of giving the Government an opportunity to adduce evidence in corroboration of that contained in the selective service file.

On appeal, defendant makes no claim he submitted to induction but rather he contends the Government failed to establish the corpus delicti; namely, the Government failed to prove beyond a reasonable doubt by competent evidence that defendant refused induction. Defendant further contends the district court committed prejudicial error in permitting the Government to reopen its case after it had rested and a motion for a judgment of acquittal had been filed by defendant. Defendant also urges that the district court subjected him to double jeopardy, in violation of the Fifth Amendment of the Federal Constitution, by allowing the Government to reopen its case.

On the basis of the reasoning and the authorities set forth in United States v. Holmes, 7 Cir., 387 F.2d 781 (1968), cert. denied, 391 U.S. 936, 88 S.Ct. 1835, 20 L.Ed.2d 856 (1968), we

hold that the district court did not err in admitting into evidence defendant's selective service file and that such evidence was sufficient in this case to establish beyond a reasonable doubt defendant's refusal to submit to induction. See Gonzales v. United States, 364 U.S. 59, 66, 80 S.Ct. 1554, 4 L.Ed.2d 1569 (1960).

Defendant's selective service file, the contents of which he does not controvert, conclusively establishes that defendant refused to submit to induction. The file contains a copy of a letter sent to the United States Attorney by the Assistant Adjutant at the induction center, First Lieutenant Robert J. Uplinger. This letter states that defendant, in his own ·handwriting and over his own signature, refused to be inducted. The letter names the persons who witnessed defendant's refusal of induction; it also indicates that in accordance with governing regulations defendant was informed that it is a felony to refuse induction and was advised of the possible consequences of his refusal. The file also contains a witnessed statement of refusal, referred to by First Lieutenant Uplinger in his letter to the United States Attorney, purportedly written and signed by defendant Rhyne. In addition, the file contains a Selective Service Delivery List and the Local Board's minutes, both of which indicate that defendant refused induction.

The *undenied* and *uncontradicted* evidence contained in defendant's file is more than sufficient to establish defendant's guilt of refusing to submit to induction. The evidence in support of the judgment of conviction in the instant case is much stronger, both quantitatively and qualitatively, than that found in the case of United States v. Holmes, *supra*; a case we find to be dispositive of the issue before us. In ·*Holmes*, we affirmed a judgment of conviction premised solely upon evidence

garnered from defendant's selective service file. A mere notation on the bottom of a letter contained in that file, indicating that defendant had failed to follow his Board's orders, was deemed sufficient to convict.

■ In conjunction with the issue of establishing the corpus delicti, defendant raises the question of whether the authorities at the induction station followed the prescribed procedures for dealing with defendant's refusal of induction. Defendant offered no proof that the officials at the induction center failed to process him in conformity with the procedures set forth in Army Regulation 601–270.[1] All evidence adduced on the question is to the contrary and indicates that there was substantial compliance with this regulation. As noted, Lieutenant Uplinger's letter states that defendant was informed that refusal to submit to induction constituted a felony and that defendant was advised of the possible sanctions for refusal. In addition, the letter states that defendant was requested to and did make a voluntary signed statement of refusal to serve.

■■ Notwithstanding this evidence of apparent substantial compliance with the prescribed procedures for induction and its refusal, a presumption of regularity attends the induction process. This presumption of validity and regularity which attaches to the induction process must be overcome by probative evidence to the contrary. In Kaline v. United States, 9 Cir., 235 F.2d 54, 59 (1956), the court stated that "The presumption is that the [prescribed] legal steps [for dealing with induction and its refusal] were taken * * *." Even a showing by the defendant of a minor departure from the prescribed procedure will not provide a valid defense where the paramount requirements of the induction process have been complied with. Edwards v. United States, 9 Cir., 395

---

1. Similar regulations are reproduced in United States v. Van Hook, 7 Cir., 284 F.2d 489 (1961), reversed and remanded for resentencing, 365 U.S. 609, 81 S.Ct. 823, 5 L.Ed.2d 821 (1961). In essence, the regulation provides for stepping forward for induction and for felony warnings for those who refuse.

F.2d 453 (1968), *cert. denied,* 393 U.S. 845, 89 S.Ct. 128, 21 L.Ed.2d 115.

In the instant case, we find that defendant failed to produce any evidence to overcome the presumption of regularity in procedure and that the only evidence adduced indicates there was apparent substantial compliance with the applicable army regulation.

Chernekoff v. United States, 9 Cir., 219 F.2d 721 (1955), a case upon which defendant places great reliance, is clearly distinguishable from and not dispositive of this case. In that case, the evidence showed that defendant was not accorded the required procedure at the induction center. Here there is no such showing. *Chernekoff* was distinguished in a similar fashion by this court in United States v. Van Hook, *supra.*

In view of the evidence before us and the absence of evidence to the contrary, we are satisfied that the prescribed induction process was adhered to and that nothing of an irregular or prejudicial nature transpired at the induction station.

■ We find no merit in defendant's contention that the trial court committed prejudicial error in allowing the Government to reopen its case after it had rested and defendant had filed a written motion for a judgment of acquittal.

■ It is well-established that "the trial court has a large discretion with respect to order of proof and permitting a party to reopen its case after it has rested." Lucas v. United States, 8 Cir., 343 F.2d 1, 3 (1965) and cases cited therein, *cert. denied,* 382 U.S. 862, 86 S.Ct. 125, 15 L.Ed.2d 100; Massey v. United States, 10 Cir., 358 F.2d 782, 786 (1966), *cert. denied,* 385 U.S. 878, 87 S.Ct. 159, 17 L.Ed.2d 105.

After reviewing the transcript of the proceedings, it is evident why the trial court permitted the Government to reopen its case. The permission obviously arose out of the trial court's desire to assure defendant fair protection of his interests, to insure the fullest production of evidence, and to equitably resolve the controversy of whether the documentary evidence of defendant's guilt contained in his selective service file had to be substantiated by further evidence.[2]

It is not alleged that the additional evidence offered after the reopening of the case surprised defendant, and defendant does not contend that this evidence was more detrimental to him than it would have been if it had been offered originally. Defendant had every apparent opportunity but declined to meet this additional evidence. Under these circumstances, it can not be said that the trial court abused its discretion in permitting the Government to reopen its case, nor can it be said that defendant was unduly prejudiced by the reopening.

■ We find no merit in defendant's double jeopardy argument in which it is urged that the trial court subjected defendant to double jeopardy, in violation of the Fifth Amendment, by allowing the Government to reopen. Defendant maintains that in reopening the case the Government in effect was twice putting him in jeopardy for the same offense. Defendant equates the reopening of the case with a new trial; we find no authority or precedent for such an equation.

■ Before the defense of double jeopardy can attach, defendant must be posited in jeopardy a second time for the same offense. Green v. United

2. In granting the Government permission to reopen its case the court stated:
"In the interest of justice and in a situation with circumstances such as exist here where the only question is whether or not certain facts existed [*i.e.,* whether or not the defendant committed the crime of refusing induction] and the question of whether or not certain documentary proof is or is not sufficient to establish certain facts, I can certainly see no reasonable basis for any objection on your [defendant's] part to the government bringing in the live witness [to corroborate the documentary evidence] which you [defendant] say should be here."

**662**

States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). Here there is no showing that defendant had been formerly placed in jeopardy of life or limb for the same offense.

The judgment of conviction is affirmed.

Affirmed.